# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

RANDELL EARL HAMILTON,

                **Plaintiff,**

v.

                                              18-CV-6782

COMMISSIONER OF SOCIAL SECURITY,

                **Defendant.**

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment. Dkt. No. 17. Randell Earl Hamilton ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for benefits. This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. Nos. 9, 16. For the following reasons, Plaintiff's motion (Dkt. No. 9) is denied, and the Commissioner's motion (Dkt. No. 16) is granted.

## BACKGROUND

On April 16, 2014, Plaintiff filed for Supplemental Security Income ("SSI"), alleging disability beginning on June 5, 2013, due to a learning disorder, depression, a

back condition, and a gunshot injury to the face. Tr. at 135-40, 157.[1] Plaintiff's application was denied at the initial level and he requested review. Tr. at 48-58, 60-71, 72-74. Administrative Law Judge John Costello ("the ALJ") conducted a hearing on September 25, 2017, at which Plaintiff and an impartial vocational expert testified. Tr. at 26-46. Plaintiff was assisted by a non-attorney representative. *Id*. On November 20, 2017, the ALJ issued a decision in which he found that Plaintiff was not disabled and therefore, not eligible for benefits. Tr. at 10-21. The Appeals Council denied Plaintiff's request for review, making the ALJ's determination the final decision of the Commissioner. Tr. at 1-6. Plaintiff thereafter commenced this action seeking review of the Commissioner's decision. Dkt. No. 1.

## **LEGAL STANDARD**

**Disability Determination**

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act. *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe," meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket No. 8.

2

impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals a Listings criterion and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If not, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's conclusions were based upon an erroneous legal standard, and whether the Commissioner's findings were supported by substantial evidence in the record as a whole. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003). Substantial evidence is "more than a mere scintilla." *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009). "It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion." *Id.* (emphasis added and citation omitted). The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard. *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the Plaintiff's position. *See Perez v. Chater,* 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015). Likewise, where the

4

evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## DISCUSSION AND ANALYSIS

**The ALJ's Decision**

The ALJ analyzed Plaintiff's claims using the familiar five-step process described above. *Lynch v. Astrue*, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his application date. Tr. at 12. At step two, he found that Plaintiff had the following severe impairments: a learning disorder, post-traumatic stress disorder ("PTSD"), depressive disorder, anxiety disorder, obesity, and status post fixation of the left ulna. Tr. at 12-13.[2] The ALJ noted that Plaintiff reported that he suffered back pain for over five years but "no objective testing establish[ed] the presence of any impairment," and Plaintiff "was undergoing no treatment and was prescribed no medication for back pain." Tr. at 13.

At step three, the ALJ concluded that Plaintiff's impairments did not, either individually or in combination, meet or equal the Listings, giving special consideration to Listing 1.02 (Major Dysfunction of a Joint (Due to Any Cause)), 12.04 (Depressive, Bipolar and Related Disorders), 12.05 (Intellectual Disorder), 12.06 (Anxiety and Obsessive-Compulsive Disorders), 12.15 (Trauma and Stressor Related Disorders). Tr. at 13-14.

---

[2] This Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized at length in the papers.

5

Next, the ALJ found that Plaintiff retained the RFC to perform light work as defined by 20 C.F.R. § 416.967(b), except "the claimant has sufficient attention and concentration to understand, remember[,] and follow simple instructions; [he can perform] low stress work defined as work involving only occasional decision making and occasional changes in work setting; no interaction with the public; occasional interaction (coordination) with coworkers; but has no limitations on proximity to co-workers." Tr. at 14-15.

Continuing to the fourth step, the ALJ found that Plaintiff had no past relevant work. Tr. at 19. Based on Plaintiff's age (32 years old on his application date), limited education, and with the aforementioned RFC, the ALJ found that he could perform work that exists in significant numbers in the national economy, specifically, the jobs of photocopy machine operator (DOT No. 207.685-014), and laundry sorter (DOT No. 361.687-014). Tr. at 19. Accordingly, the ALJ concluded that Plaintiff was not under a disability during the relevant period. Tr. at 20.

**Judgment on the Pleadings**

As noted above, the parties have cross-moved for judgment on the pleadings. Dkt. Nos. 9, 16. Plaintiff contends that the ALJ failed to find that that he had the severe mental impairment of intellectual disability at step two, resulting in a faulty analysis of the cognitive evidence at step three; erroneously considered Plaintiff's arm fracture under Listing 1.02 (Major Dysfunction of a Joint) rather than the more appropriate Listing 1.07 (Fracture of an Upper Extremity); and improperly declined to afford significant weight to any medical opinions or to cite to any alternative evidence in support of the RFC. Dkt. No. 9-1, pp. 16-30. The Commissioner contends that Plaintiff did not meet all of the

medical criteria for an intellectual disorder under Listing 12.05; there was no evidence that Plaintiff's fracture failed to heal as required to meet or medically equal Listing 1.07 (Fracture of an Upper Extremity); and the ALJ "identified the evidence that supported the limitations included in the RFC, including the treatment records that showed improvement and the records that showed moderate limitations generally" (Dkt. No. 16-1, pp. 16-30). Having reviewed the record, this Court finds that the ALJ did not err and that the RFC was substantially supported.

**Intellectual Disorder/Listing 12.05**

Step two of the disability evaluation, the severity determination, is intended to "identify[ ] at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled." *Bowen v. Yuckert,* 482 U.S. 137, 153 (1987); *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995) (recognizing that the severity determination is meant "to screen out *de minimis* claims"). As set forth in the regulations, "[i]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled." 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require." 42 U.S.C. § 423(d)(5)(A); *Bowen,* 482 U.S. at 148; *see also Taylor v. Astrue,* 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (holding that "[t]he claimant bears the burden of presenting evidence establishing severity").

Notably, "the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe." *Taylor,* 32 F. Supp. 3d at 265 (internal citations omitted). Consistent with this reasoning, "if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work[,]'" the ALJ should not find a severe condition. *Rosario v. Apfel,* No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting SSR 85-28, 1985 WL 56856, at *3).

When a claimant allegedly suffers mental impairments, the ALJ is required to follow a "special technique" at each level of the administrative review process to determine whether the claimant has any severe mental impairments and whether the impairments meet or equal the Listings. *Kohler*, 546 F.3d at 265; 20 C.F.R. Part 404, Subpt. P, App'x. 1; 20 C.F.R. § 404.1520a. Specifically, the ALJ must assess the claimant's degree of functional limitation resulting from a mental impairment in four broad functional areas identified in Paragraph B of the adult mental disorders listings. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). Effective January 17, 2017, the four functional areas include: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 416.920a(c)(3).

In assessing the functional areas, an ALJ must apply the degree of limitations using a five-point scale consisting of "none, mild, moderate, marked, and extreme." 20 C.F.R. § 416.920a(c)(4). An "extreme" limitation of one or a "marked"

8

limitation of two of these areas indicates "significant deficits in adaptive functioning." 20 C.F.R. Part 404, Subpt. P. App'x, § 12.05B. If the degree of the limitations is "none" or "mild," an ALJ will generally find the impairments non-severe; however, if they are severe, an ALJ must determine if the disorder meets or equals a listing. 20 C.F.R. § 416.920a(d)(1-2). "The ALJ's written decision must 'reflect application of the technique, and ... include a specific finding as to the degree of limitation in each of the [four] functional areas.'" *Kennerson v. Astrue,* No. 10-CV-6591 (MAT), 2012 WL 3204055, at *14 (W.D.N.Y. Aug. 3, 2012) (citing *Kohler*, 546 F.3d at 266); *Howard v. Comm'r of Soc. Sec.*, 203 F. Supp. 3d 282, 295-97 (W.D.N.Y. 2016).

"Courts have held that error at step two in determining the severity of impairments is harmless if the ALJ finds that at least one other severe impairment and continues through the sequence of the disability analysis." *Howard*, 203 F. Supp. 3d at 297 (citing cases). This is "because the non-severe impairments can later be considered at the RFC stage." *Id.*; *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (holding that the ALJ's failure to find two impairments "severe" at step two was harmless, because the ALJ considered them later in the evaluation process). While this harmless error doctrine does not always apply in relation to mental impairments, *Howard*, 203 F. Supp. 3d at 297-98, uncertainty as to whether an ALJ applied the special technique during the severity stage will not, "standing alone, warrant remand or reversal if the ALJ's other findings show that the proper legal standards were applied and that all of [the claimant's] impairments were properly considered at all of the subsequent steps." *Booker v. Astrue*, No. 1:07-CV-646 GLS, 2011 WL 3735808, at *4 (N.D.N.Y. Aug. 24, 2011).

9

This Court finds that although the ALJ did not identify "intellectual disability" or "intellectual disorder" as one of Plaintiff's severe impairments during his severity analysis (step two), this error was harmless as he considered Plaintiff's diminished intellectual abilities in deciding whether his impairments met or equaled the Listings (step three) and in formulating his RFC (step four). Relatedly, this Court finds that Plaintiff has not met his burden to show that he suffers from an intellectual disability or borderline intellectual functioning as opposed to a learning disorder as the ALJ determined.

As an initial matter, it was more appropriate for the ALJ to evaluate Plaintiff's cognitive deficits in the context of a "learning disorder." This was the impairment that both Plaintiff and his representative identified as disabling (Tr. at 30, 130, 174, 206, 210) as well as the diagnosis given by the acceptable medical sources who evaluated Plaintiff. For example, Dr. Adam Brownfield diagnosed Plaintiff with specific learning disorders in reading, math, and written expression, but did not diagnose Plaintiff with an intellectual disability. Tr. at 252. Christina Caldwell, Psy.D., administered cognitive testing on May 19, 2011, resulting in the following standard scores: Verbal Comprehension IQ – 72, Perceptual Reasoning IQ – 75, Working Memory IQ – 69, Processing Speed IQ – 81, and Full-Scale IQ – 70. Tr. at 650. Although she acknowledged that "the claimant's full scale IQ falls within the mild mental retardation range[,]" "[his] processing index[,] which provides an indication of one's ability to quickly and correctly scan sequence or discriminate simple visual information and helps measure short-term visual memory, attention, and visual motor coordination[,] was significantly higher than his work memory index[,] which provides an indication of his ability to temporarily retain information and memory, perform some

operation or manipulation with it, and produce a result." Tr. at 649. Accordingly, Dr. Caldwell did not diagnose Plaintiff with any intellectual disability. Tr. at 649. Instead, she noted only a "previous diagnosis of a learning disability." Tr. at 650.

Thus, it was appropriate for the ALJ to find "learning disorder" to be the severe impairment, rather than "intellectual disability." See 20 C.F.R. § 416.921 (holding that "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source"). Of particular importance here, the ALJ explicitly considered at step three whether Plaintiff's mental impairment met Listing 12.05 (Intellectual Disorder), 20 C.F.R. § Pt. 404, Subpt. P, App'x 1, and concluded that it did not.[3] Tr. at 14. The ALJ found that Plaintiff did not meet the Paragraph B criteria because he did not have an extreme limitation of one, or a marked limitation of two of the relevant areas of functioning. Rather, the ALJ found that Plaintiff had: (1) a moderate limitation in understanding, remembering, or applying information; (2) a moderate limitation in interacting with others; (3) a moderate limitation in concentrating, persisting, or maintaining

---

[3] Listing 12.05 (Intellectual Disorder) was historically referred to as "mental retardation." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00B4. This Listing is:
  B.  Satisfied by 1, 2, and 3 (see 12.00H):
     1. Significantly subaverage general intellectual functioning evidenced by a or b:
        a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
        b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
     2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
        a. Understand, remember, or apply information (see 12.00E1); or
        b. Interact with others (see 12.00E2); or
        c. Concentrate, persist, or maintain pace (see 12.00E3); or
        d. Adapt or manage oneself (see 12.00E4); and
     3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

pace; and (4) a mild limitation in adapting or managing himself. Tr. at 13. In making these findings, the ALJ relied upon Dr. Brownfield's June 9, 2015 report stating that Plaintiff was able to recall 3 out of 3 objects immediately and with a delay; and was able to count, but was unable to do simple calculations or serial 3s correctly. Tr. at 13, 249-252. The ALJ also cited Plaintiff's statements that he was raising his daughter, was able to dress, bathe, and groom himself, cook meals and clean, but that his mother needed to help him manage his money. Tr. at 13-14, 251.

Because the evidence did not satisfy Paragraph B, Plaintiff's mental impairment could not as a legal matter meet the criteria for Listing 12.05. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). Plaintiff argues that the ALJ should have ordered additional IQ testing as he requested. This Court does not agree. Dr. Caldwell administered a full standardized IQ assessment in May of 2011, when Plaintiff was 28 years old. Tr. at 648-49. Dr. Brownfield tested Plaintiff's attention and concentration, recent and remote memory skills, and cognitive functioning in June of 2015. Tr. at 251. This testing was timely and complete enough for the ALJ to determine whether Plaintiff's mental impairments rendered him unable to work.

**Listing 1.07**

The record shows that Plaintiff sustained a left arm injury following a motor vehicle accident on or about September 13, 2015, resulting in displaced radius and ulnar shaft fractures. Tr. at 280, 300-05, 323-25, 329-30, 429-36. Plaintiff underwent surgery of

the open reduction internal fixation to correct the fractures and was discharged on September 14, 2015. Tr. at 304. Plaintiff contends that he demonstrated nonunion or incomplete union of his ulnar and radius fractures for more than 12 months after surgery and thus, the ALJ erred in not examining his limitations under Listing 1.07 (Fracture of an Upper Extremity). This Court does not agree.

Listing 1.07 defines "Fracture of an Upper Extremity" as follows:

> Fracture of an upper extremity with nonunion of a fracture of the shaft of the humerus, radius, or ulna, under continuing surgical management, as defined in 1.00M, directed toward restoration of functional use of the extremity, and such function was not restored or expected to be restored within 12 months of onset.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.07. "Continuing surgical management" refers to "surgical procedures and any other associated treatments related to the efforts directed toward the salvage or restoration of functional use of the affected part." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.00M. According to Section 1.00N, Section 1.07 can only be satisfied if "[a]fter maximum benefit from therapy has been achieved in situations involving fractures of an upper extremity," "there have been no significant changes in physical findings or on appropriate medically acceptable imaging for any 6-month period after the last definitive surgical procedure or other medical intervention . . . ." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.00N. Put another way, it is not enough for Plaintiff to show nonunion of his fractures. There must also be evidence that the fracture failed to heal or was not expected to heal within 12 months of his surgery, and that he did not have functional use of his arm after all medical intervention had been used and maximum medical improvement had been reached. *See Laine v. Comm'r of Soc. Sec.*, No. 09 CIV. 1251 RO, 2013 WL 2896968, at *4 (S.D.N.Y. June 13, 2013) (holding that Plaintiff did not meet

Section 1.07 because "there was no evidence that the fracture of the radial head of Plaintiff's right elbow had failed to heal . . . .").

The evidence in Plaintiff's case does not meet these criteria. For example, Plaintiff's doctor, Sendhan Rajamanickam, explicitly stated on August 23, 2016 (11 months after Plaintiff's surgery) that a CT scan of his left forearm revealed "no evidence of nonunion." Tr. at 517. At that time, Dr. Rajamanickam noted that Plaintiff had a "delayed union of his . . . bone forearm fracture likely from his smoking. This has been reiterated to the patient. He has been asked to stop smoking again. He is not going to occupational therapy and does not want to go." Tr. at 517. Dr. Rajamanickam advised Plaintiff to refrain from "his weight lifting in the gym." Tr. at 518. This indicates that Plaintiff had functional use of his arm and that there were additional treatment measures that he was not pursuing, including smoking cessation and occupational therapy.

In fact, the record shows that Plaintiff had very few limitations relating to his fracture, and that it improved steadily within weeks of his corrective surgery. For example, on February 10, 2016, only three and a half months after his surgery, Plaintiff reported that he had only mild pain in his left arm and that he was taking ibuprophen to manage it with "moderate effect." Tr. at 515. Dr. Rajamanickam noted that Plaintiff's motor function and sensation were "grossly intact and equal bilaterally to the median ulnar and radial nerve distributions[,]" that "range of motion of the wrist was about half the normal side in extension and nearly full in flexion with full pronation[,] supination[,] and slightly restricted ulnar deviation[,]" and that x-rays taken of the left forearm revealed "good position of the fracture with excellent alignment." Tr. at 515. By March 2016, four months post-surgical,

Plaintiff was no longer using his wrist splint and reported only mild pain. Tr. at 516. As previously noted, scans showed no evidence of nonunion in August of 2016, and by December of 2016, the fracture line was "pretty near nonexistent." Tr. at 518. Given this evidence, it cannot be said that there were no significant changes in the physical findings or imaging within 6 months of Plaintiff's surgery or that Plaintiff's function was not restored or expected to be restored within 12 months of his injury. 20 C.F.R. § Pt 404, Subpt. P. App. 1, §§ 1.00N, 1.07. Accordingly, the ALJ did not err in failing to evaluate Plaintiff's limitations under Listing 1.07 (Fracture of an Upper Extremity) instead of Listing 1.02 (Major Dysfunction of a Joint (Due to Any Cause)).

**Substantial Evidence Supports the RFC**

The ALJ found that Plaintiff could perform a full range of light work, but limited him to "low stress work involving only occasional decision making and occasional changes in the work setting" appropriate for a person with "sufficient attention and concentration to understand, remember[,] and follow [only] simple instructions." Tr. at 14. Plaintiff argues that the RFC is not supported by substantial evidence because all of the medical opinions related to Plaintiff's mental abilities were more restrictive than the RFC, and because no medical source had opined on Plaintiff's physical abilities since he injured his wrist. Dkt. No. 9-1, p. 23-28. This is not correct.

It is well established that an RFC need not correspond perfectly to a medical opinion. *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 79 (2d Cir. 2018). Rather, the ALJ is entitled to weigh all of the evidence available to make a residual

functional capacity finding that is consistent with the record as a whole. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record."). Second, contrary to Plaintiff's argument, Dr. Brownfield, Dr. Caldwell, and V. Reddy, Ph.D. all opined that Plaintiff was only mildly to moderately restricted mentally in his ability to perform simple tasks. For example, Dr. Brownfield stated that Plaintiff showed "[n]o evidence of limitation in following and understanding simple directions and instructions and performing simple tasks independently." Tr. at 251. Dr. Brownfield found that Plaintiff "is mildly limited in making appropriate decisions and relating adequately with others[,]" and "[is] moderately limited in maintaining attention and concentration, maintaining a regular schedule, and learning new tasks . . . ." Tr. at 251. Dr. Caldwell opined that Plaintiff can "follow and understand simple directions and instructions, perform simple tasks independently, and maintain attention and concentration, [has a] limited ability to maintain a regular schedule, [but is] unable to perform complex tasks independently, [has a] limited ability to make appropriate decisions, . . . and [is] unable to appropriately deal with stress at times." Tr. at 645. Finally, V. Reddy, the State agency medical consultant, opined that Plaintiff had only mild restrictions in activities of daily living, no difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence and pace, and that he retained the ability to perform simple work. Tr. at 53, 56.

      The ALJ assigned varying weight to these opinions (Dr. Brownfield – partial weight; Dr. Caldwell – limited weight; and Dr. Reddy – some weight). He also crafted an RFC designating "low stress work" involving "simple instructions," and "only occasional decision making" and "changes in work setting," "no interaction with the public," and only

16

"occasional interaction (coordination) with coworkers." Tr. at 15. This RFC was entirely consistent with the opinions of Drs. Brownfield, Caldwell, and Reddy.

Plaintiff is correct that Dr. Victoria Briggs opined that Plaintiff was more seriously limited than the other doctors concluded. Tr. at 640-42. However, even Dr. Briggs did not conclude that Plaintiff was unable to work. Rather, she found Plaintiff was "unlimited or very good" in two of 20 mental ability measures, "limited but satisfactory" in 10 of the 20, "seriously limited, but not precluded" in seven of the 20; and "unable to meet competitive standards" on only one measure, specifically, the ability to "carry out detailed instructions." Tr. at 641. The ALJ gave Dr. Briggs' opinion only "partial weight," and contrary to Plaintiff's argument, gave good reasons for doing so. Specially, the ALJ reasoned that the opinion was not supported by an explanation," and that Dr. Briggs' treatment records showed improvement with counseling and reflected no more than moderate mental limitations generally. Tr. at 18. Indeed, Dr. Briggs' September 15, 2017 Medical Source Opinion explicitly states that Plaintiff's prognosis is "good," that he "has responded well to treatment," and that "his symptoms have improved since admission" into the counseling program. Tr. at 640, 42. These were proper regulatory factors for the ALJ to consider in evaluating Dr. Briggs' opinion. *See* 20 C.F.R. § 416.927(c)(3) (stating that opinions supported by relevant evidence and a better explanation will be given more weight); 20 C.F.R. § 416.927(c)(4) (stating that the ALJ will consider the consistency of the opinion with the record as a whole in weighing the opinion). Given the inconsistency of Dr. Briggs' opinion with the record as a whole, the ALJ reasonably concluded that there was little evidence to support her opinion that Plaintiff would miss two days of work each month due to his mental health conditions or treatment. Tr. at 18.

The ALJ also cited to other evidence in the record that showed Plaintiff was not as mentally limited as he claimed. For example, Plaintiff reported in April of 2016 that he was "doing fine mentally." Tr. at 17, 345. In September of 2016, Plaintiff told his counselor that his life was "good and better than it has ever been," and that he was able to "effectively manage [his] symptoms of PTSD." Tr. at 17, 378. The ALJ also noted that: Plaintiff had sole custody of his daughter and was able to do extensive activities of daily living such as cooking and cleaning (Tr. at 17); he told his counselor in April of 2016 that he found himself going out more because of his daughter's desire to go out (Tr. at 17); and he had enrolled in REOC for GED classes and was interested in finding a job (Tr. at 575, 614). It was permissible for the ALJ to consider these activities of daily living in assessing Plaintiff's RFC. 20 C.F.R. §§ 404.1529, 416.929; see Cruz v. Colvin, 278 F. Supp. 3d 694, 699 (W.D.N.Y. 2017) (holding that an ALJ may discount a treating physician's opinion that a claimant is greatly restricted based on that claimant's activities of daily living); Poupore v. Astrue, 566 F.3d 303, 307 (2d Cir. 2009) (holding that the ALJ correctly found that Poupore was not disabled because he was able to care for his one-year-old child, change diapers, vacuum, wash dishes, occasionally drive, watch television, read, and use the computer).

Finally, with respect to the ALJ's physical RFC, this Court finds that it was substantially supported. Dr. Balderman opined in July of 2015 that Plaintiff had no physical limitations and he had full grip strength. Tr. at 19, 277. The ALJ noted that although Plaintiff broke his arm, he testified that he retained the ability to lift 30 to 40 pounds with both hands. Tr. at 37-39. As previously noted herein, Plaintiff regained functionality of his arm within months of the accident. Tr. at 515-16. Accordingly, the ALJ

reasonably found that Plaintiff could perform light work, which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

In the view of this Court, the evidence cited by the ALJ is more than sufficient to support his conclusion that Plaintiff is not disabled. *Moran,* 569 F.3d at 112 (stating that substantial evidence is "more than a mere scintilla"). Plaintiff's RFC is wholly consistent with the medical and psychological records, as well as Plaintiff's own testimony. The restriction that Plaintiff can perform only "low stress work" involving only "simple instructions" and "occasional decision making and occasional changes in work setting" accommodates his mental limitations as determined by Drs. Brownfield, Caldwell, and Reddy, and to a lesser extent, Dr. Briggs. Plaintiff's belief that he is more cognitively limited than the ALJ determined is not a legally sufficient reason to disturb the ALJ's decision. The substantial evidence standard is so deferential that "there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012). That is, "once an ALJ finds the facts, [a reviewing court] can reject those facts only if a reasonable factfinder **would have to conclude otherwise**." *Brault*, 683 F.3d at 448 (emphasis added). This case does not present such a situation. For all of the foregoing reasons, this Court finds that the ALJ's decision is free from legal error and is supported by substantial evidence.

## **CONCLUSION**

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is hereby DENIED, and the Commissioner's motion for

19

Judgment on the pleadings (Dkt. No. 16) is GRANTED. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:    Buffalo, New York
         March 23, 2020

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.
United States Magistrate Judge**